{¶ 1} Defendant-appellant, Juan Oquendo, appeals from the judgment of the Common Pleas Court, rendered after a bench trial, finding him guilty of two counts of felonious assault. Oquendo contends that the evidence was insufficient to support his convictions and that his convictions were against the manifest weight of the evidence. We affirm.
 {¶ 2} In September 2005, a Cuyahoga County Grand Jury indicted Oquendo on two counts of felonious assault in violation of R.C. 2093.11, two counts of aggravated robbery in violation of R.C. 2911.01, and one count of intimidation in violation of R.C. 2921.04. Oquendo pled not guilty and waived his right to a jury, and the case proceeded to a bench trial.
 {¶ 3} Robert Wolford, who admitted that he had a criminal record, testified at trial that at approximately 9:00 a.m. on August 23, 2005, he, a woman named Tabatha Toon, and Oquendo were smoking crack cocaine on the porch of a vacant house. According to Wolford, he told Toon and Oquendo that he had $100 in his pocket because he was on his way to see his probation officer to pay various fines and court costs.
 {¶ 4} Wolford testified that he and Oquendo argued and pushed each other when Oquendo tried to take some drugs from him. Wolford left to buy cigarettes, and when he returned, Oquendo demanded that Wolford give him money. According to Wolford, when he refused, Oquendo reached for Wolford's knife, which was on the ground, and stabbed him in the back and stomach. Wolford testified that he was hospitalized for six days as a result of his wounds and still suffers pain from them.
 {¶ 5} Wolford testified that he saw Oquendo two times after he was released from the hospital and each time, Oquendo waved a knife at him in a threatening manner. On the second occasion, Wolford flagged down the police, who arrested Oquendo. Wolford testified at trial that the knife recovered from Oquendo when he was arrested was not the same knife used in the attack, although Wolford admitted that he told the police it was the same knife.
 {¶ 6} Cleveland police officer Margaret Doran testified that she was dispatched to the scene after the stabbing. After speaking with Toon, she and Toon drove around the area, looking for the suspect. Doran then heard a radio broadcast which indicated that the suspect was on West 33rd Street, approximately one mile from where the stabbing had occurred. She responded to the area, and saw Oquendo, who matched the description of the suspect, walking down a driveway. Doran saw fresh superficial wounds on Oquendo's face and observed that he was perspiring and appeared to be nervous.
 {¶ 7} After the trial court court denied the defense's Crim.R. 29(A) motion for acquittal, Oquendo testified in his own defense. He disputed Wolford's version of the events, but admitted that he had stabbed Wolford. According to Oquendo, the night before the incident, he and Wolford stole a radio and cellphone, which they sold to buy crack cocaine. The next morning, as he, Wolford, and Toon were smoking crack, Oquendo took $3 from Toon because she had taken his crack pipe. Wolford got angry and attacked Oquendo. When Oquendo saw Wolford reaching for his knife, he grabbed him, and Wolford dropped the knife. Oquendo then saw Toon reaching for the knife, so he grabbed it. Oquendo admitted that as he struggled with Wolford, he "started to throw with the knife." Oquendo testified that he did not know how many times he stabbed Wolford because he was "just throwing at random."
 {¶ 8} Oquendo denied taking $100 from Wolford and further denied threatening Wolford or his family with a knife at any time after the fight. Oquendo testified that at the time of the incident, he did not know that Wolford was on probation or that he was carrying $100. According to Oquendo, "if he [referring to Wolford] had a hundred dollars, we would have been smoking all night long, because the crack is something that you want to do."
 {¶ 9} At the close of all the evidence, the trial court again denied Oquendo's Crim.R.29(A) motion for acquittal. The trial court subsequently found Oquendo guilty of both felonious assault charges, but not guilty of the remaining charges, and sentenced him to two years incarceration.
1. SUFFICIENCY OF THE EVIDENCE
 {¶ 10} In his first assignment of error, Oquendo argues that the trial court erred in denying his Crim.R. 29(A) motion for acquittal because the evidence was insufficient to support his convictions.
 {¶ 11} Crim.R. 29(A) provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 12} Oquendo argues that the evidence was insufficient to support his convictions because Wolford admitted that he had a criminal record, and that he was a drug user and high at the time of the incident and, therefore, his testimony was not to be believed. On a sufficiency question, however, the issue is not whether the evidence should be believed but whether the evidence, if believed, is sufficient to convince the average mind of the defendant's guilt beyond a reasonable doubt.
 {¶ 13} R.C. 2903.11(A), regarding felonious assault, provides that, "[n]o person shall knowingly * * * (1) cause serious physical harm to another * * *; (2) cause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *."
 {¶ 14} R.C. 2901.01(A)(5) defines "serious physical harm to persons" as any of the following:
 {¶ 15} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 16} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 17} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 18} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 19} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 20} This court has held that "'[generally, a trial court does not err in finding serious physical harm where the evidence demonstrates the victim sustained injuries necessitating medical treatment.'" State v.Scott, Cuyahoga App. No. 81235, 2003-Ohio-5374, at % 7 , quotingState v. Davis, Cuyahoga App. No. 81170, 2002-Ohio-7068.
 {¶ 21} R.C. 2923.11(A) defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." The Committee Comment to R.C. 2923.11(A) specifically mentions a knife as a deadly weapon.
 {¶ 22} Here, Wolford testified that when he refused to give Oqueno money, Oqueno picked up a knife and stabbed him several times, necessitating six days of hospitalization. Wolford testified further that he still suffers pain as a result of the knife wounds. This evidence, if believed, was sufficient to establish all of the elements of felonious assault, i.e., that Oqueno knowingly caused serious physical harm to Wolford by means of a deadly weapon.
 {¶ 23} Appellant's first assignment of error is overruled.
2. MANIFEST WEIGHT OF THE EVIDENCE
 {¶ 24} In his second assignment of error, Oqueno contends that his convictions are against the manifest weight of the evidence.
 {¶ 25} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v. Thompkins (1997), 78 Ohio St.3d 380, 390. When considering appellant's claim that the conviction is against the weight of the evidence, a reviewing court sits essentially as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. Id. The reviewing court must examine the entire record, weighing the evidence and considering the credibility of the witnesses, while being mindful that credibility generally is an issue of fact for the trier of fact to resolve. State v. Thomas (1982),70 Ohio St.2d 79, 80. The court may reverse the judgment of conviction if it appears that the factfinder, in resolving conflicts in the evidence, `"clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 26} We find no such miscarriage of justice in this case. Although Oqueno again complains that Wolford's version of the events leading to the stabbing is not credible, any credibility issues regarding his testimony were for the trier of fact to decide. State v. DeHass (1967),10 Ohio St.2d 230. Moreover, Oqueno admitted that he stabbed Wolford multiple times. Accordingly, the trial court did not err in finding Oqueno guilty of felonious assault.
 {¶ 27} Appellant's second assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and MARY EILEEN KILBANE, J., CONCUR.