[Cite as *State v. Jones*, 2011-Ohio-1984.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                           :

    Plaintiff-Appellee                  :        C.A. CASE NO.    23926

v.                                      :        T.C. NO.    09CR623

ANTHONY WAYNE JONES                     :         (Criminal appeal from
                                                  Common Pleas Court)
    Defendant-Appellant             :

                                        :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____22nd_____ day of _____April_____, 2011.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

BRENT E. RAMBO, Atty. Reg. No. 0076969, 15 W. Fourth Street, Suite 250, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Defendant-appellant Anthony Jones appeals from his convictions and sentences for two counts of aggravated burglary, four counts of kidnapping, five counts of aggravated robbery, and two counts of felonious assault, all with firearm specifications, as well as three counts of assault, one count of having weapons under disability, and one count

of tampering with evidence. For the following reasons, the judgment of the trial court will be Affirmed in part and Reversed in part and Remanded to the trial court for further proceedings.

## I

{¶ 2} On February 22, 2009, Jones and his co-defendant burglarized a Huber Heights home. The armed men tied up and beat the four occupants of the home, shooting one of them. As a result of those events, Jones was indicted on two counts of aggravated burglary, four counts of kidnapping, five counts of aggravated robbery, and two counts of felonious assault, all with firearm specifications. He was also indicted on three counts of assault, one count of having weapons under disability, and one count of tampering with evidence. Jones filed a motion to suppress evidence seized from his home pursuant to a search warrant. The trial court overruled the motion.

{¶ 3} On February 8, 2010, Jones pled no contest to the charges. On February 23, 2010, the trial court sentenced Jones to an aggregate term of 37 years in prison. Two days later, Jones filed a motion to withdraw his plea, claiming that he had been misled by the trial court and his defense attorney to believe that he would receive a substantially lesser sentence. Prior to the trial court's having the opportunity to schedule a hearing or rule on the motion, Jones filed this appeal, and the trial court did not consider the motion.

## II

{¶ 4} Although Jones has not argued on appeal that his kidnapping and aggravated robbery convictions should have been merged as allied offenses of similar import, we sua sponte take notice of this potential error since the record provides no evidence that the trial

court considered the merger issue prior to sentencing Jones.

{¶ 5} We have previously held that a trial court's failure to merge allied offenses of similar import constitutes plain error. *State v. Coffey*, Miami App. No. 2006 CA 6, 2007-Ohio-21, ¶14. See, also, *State v. Puckett* (March 27, 1998), Greene App. No. 97 CA 43. Furthermore, the Ohio Supreme Court has held that "R.C. 2941.25(A) clearly provides that there may be *only one* conviction for allied offenses of similar import. Because a defendant may be convicted of only one offense for such conduct, the defendant may be sentenced for only one offense. Allied offenses of similar import are to be merged at sentencing. See *State v. Brown,* 119 Ohio St.3d 447, * * * ¶43; *State v. McGuire* (1997), 80 Ohio St.3d 390, 399, * * *. Thus, a trial court is prohibited from imposing individual sentences for counts that constitute allied offenses of similar import. A defendant's plea to multiple counts does not affect the court's duty to merge those allied counts at sentencing. This duty is mandatory, not discretionary. Therefore, when a sentence is imposed on multiple counts that are allied offenses of similar import in violation of R.C. 2941.25(A), * * *" there is no bar to appellate review of that sentence. *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, ¶26 (emphasis in original).

{¶ 6} Revised Code 2941.25, Ohio's multiple count statute, provides:

{¶ 7} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 8} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or

similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 9} As we discussed in *State v. Moore,* Greene App. No. 2010 CA 13, 2011-Ohio-636, the Ohio Supreme Court has recently (and subsequent to imposition of sentence in this case) clarified the process by which courts should apply this statute in determining whether offenses are allied offenses of similar import. *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314. In *Johnson,* the Supreme Court overruled *State v. Rance,* 85 Ohio St.3d 632, 1999-Ohio-291, "to the extent that it calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25. [Now w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." Id. at ¶44.

{¶ 10} Further, "[u]nder R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct. Thus, the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.

{¶ 11} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other offense with the same conduct, not whether it is possible to commit one *without* committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *Johnson,* 2010-Ohio-6314, at ¶¶47-48 (emphasis

in original), citing *State v. Blankenship* (1988), 38 Ohio St.3d 116, 119 (Whiteside, J., concurring).

{¶ 12} "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act committed with a single state of mind.'" Id. at ¶49, quoting *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, ¶50.

{¶ 13} "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." Id. at ¶52 (emphasis in original).

{¶ 14} The trial court in this case failed to address whether Jones's kidnapping and aggravated robbery convictions should have been merged prior to sentencing. "'[W]hen a defendant pleads guilty [or no contest] to multiple offenses of similar import and the trial court accepts the pleas, the trial court has a duty to conduct a hearing to determine whether the crimes were committed separately or with a separate animus for each offense prior to entering judgment sentencing the defendant.'" *State v. Jones* (April 10, 1998), Darke App. No. 97-CA-1435, quoting *State v. Mangrum* (1993), 86 Ohio App.3d 156, 158. Because Jones pled no contest to the kidnapping and aggravated robbery charges, the record is insufficient to determine whether a separate animus existed for the commission of each offense. Accordingly, we conclude that the matter must be remanded to the trial court for a hearing on whether any of the offenses of kidnapping and aggravated robbery were committed with the same animus, requiring merger of the convictions prior to sentencing.

III

{¶ 15} Jones's First Assignment of Error:

{¶ 16} "THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE WARRANT WAS DEFECTIVE."

{¶ 17} In his first assignment of error, Jones argues that the trial court should have suppressed evidence seized from his home pursuant to a search warrant which was issued without probable cause. Specifically, Jones insists that the officer who prepared the warrant "relied on hearsay evidence from other officers, did not disclose this to the judge issuing the warrant, and gave no statement as to the veracity and basis of knowledge of the person supplying the hearsay information." Additionally, Jones claims that the affidavit in support of the warrant failed to comply with Crim.R. 41 in that it failed to state a factual basis for believing that the stolen property would be in his home.

{¶ 18} When assessing the adequacy of an affidavit offered in support of a request for a search warrant, the issuing magistrate must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Smith* (2001), 146 Ohio App.3d 154, quoting *State v. George* (1989), 45 Ohio St.3d 325, paragraph one of the syllabus. In *George,* the Supreme Court outlined the standard of review that an appellate court should follow when assessing the sufficiency of a search warrant affidavit:

{¶ 19} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither the trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." Id. at paragraph two of the syllabus.

{¶ 20} Jones maintains that because Detective Noll, who prepared and signed the affidavit for the warrant, did not have first-hand knowledge of all of the information contained within the affidavit, the affidavit was not credible. However, courts have recognized the "collective knowledge doctrine," which permits police officers to rely on information provided to them by other officers in helping to establish probable cause or reasonable suspicion. See, e.g., *State v. Harris* (July 24, 1981), Lucas App. No. L-81-018, quoting *United States v. Ventresca* (1965), 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 ("observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."); *United States v. Beck* (6th Cir. 1985), 765 F.2d 146 (the collective knowledge doctrine typically applied in determining probable cause to arrest "is equally applicable to a search warrant"). Similarly, we have held that "police officers are entitled to rely on information received from other

police officers" when determining whether reasonable suspicion exists to detain a suspect. *State v. Wortham* (2001), 145 Ohio App.3d 126, 130. Under the collective knowledge doctrine, Detective Noll was justified in relying on information provided to him from other officers involved in the investigation to prepare the affidavit for the search warrant, and the magistrate was equally justified in considering that information in making her probable cause determination.

{¶ 21} The affidavit stated that Jones was arrested at his home the day after the crimes occurred. It is reasonable for the police to believe, and for the issuing magistrate and trial court to agree, that evidence of the crimes, including the gun used during the commission of the recently-committed offenses and the property taken from the victims of those crimes, was likely to be found at Jones's home.

{¶ 22} Jones's first assignment of error is overruled.

IV

Jones's Second Assignment of Error:

{¶ 23} "THE TRIAL COURT JUDGE'S DISREGARD FOR THE AGREED UPON TERMS OF THE PLEA AGREEMENT CONSTITUTED AN ABUSE OF DISCRETION."

Jones's Third Assignment of Error:

{¶ 24} "APPELLANT'S PLEA OF NO CONTEST WAS NOT GIVEN KNOWINGLY OR VOLUNTARILY AND HIS MOTION TO WITHDRAW PLEA SHOULD HAVE BEEN GRANTED."

{¶ 25} In his second assignment of error, Jones maintains that the trial court abused

its discretion in accepting his no contest plea. He insists that his plea was not knowingly or voluntarily entered because he relied upon his attorney's representation of the trial court's off-the-record, in-chambers statement that Jones would be sentenced in the range of 12 to 20 years. In his third assignment of error, Jones argues that the trial court should have granted his motion to withdraw his plea.

{¶ 26} When the trial court announced Jones's 37-year sentence, Jones's attorney objected without explanation. The trial court acknowledged the objection and immediately moved on to the sentencing of Jones's co-defendant. At the sentencing of his co-defendant, which is not a part of this appellate record, a more detailed objection was raised. *State v. Ewing,* Montgomery App. No. 23949, ___ Ohio ___.

{¶ 27} In *Boykin v. Alabama* (1969), 395 U.S. 238, 242-43, 89 S.Ct. 1709, the United States Supreme Court held that in order for a reviewing court to determine whether a guilty plea was voluntary, the record must show that the defendant knowingly, intelligently, and voluntarily waived his constitutional rights. See, also, *State v. Nero* (1990), 56 Ohio St.3d 106, 107. As a result, Crim.R. 11(C) was adopted to ensure an adequate record for review in order to facilitate a more accurate determination of the voluntariness of a defendant's plea. Id.

{¶ 28} Crim.R. 11(C)(2) requires the trial court to personally inform a defendant of the constitutional guarantees that he waives by entering a guilty plea. That section also demands that the trial court ensure that the defendant understands the nature of the charges against him, the maximum penalty that he faces, and whether he is eligible for probation. A defendant who claims that his no contest plea was not knowingly, intelligently, and

voluntarily made must show a prejudicial effect. *Nero,* supra, at 108. In other words, "[t]he test is whether the plea would have otherwise been made." Id., citations omitted.

{¶ 29} The record demonstrates that Jones was afforded a full and proper Crim.R. 11 hearing at the time of his plea. At that hearing Jones acknowledged that he understood and wanted to plead no contest to the charges against him. Jones affirmatively stated that he was satisfied with his attorney's representation. He acknowledged that he had read the plea form; he understood the form; and he signed it. The trial court found that Jones understood the rights that he was waiving by entering the plea. Moreover, Jones affirmatively stated that he was not coerced or forced to enter the plea, that nobody threatened him, and that no one made any promises to him that were not stated in open court.

{¶ 30} In both his motion to withdraw his plea and on appeal, Jones claims that during the final pre-trial conference, which took place less than two weeks prior to his plea, sentencing was discussed in the context of a potential guilty plea. The conference took place in chambers and was not recorded; Jones was not present. The only information available in the record regarding the substance of the conference is found in an affidavit by Jones that was attached to his motion to withdraw his plea. In that affidavit, Jones states although the State offered a sentencing range of 15-25 years, he rejected the offer because he was told by his attorney that the trial court had indicated that the sentencing range would be 12-20 years. Because the conference and any conversation between Jones and his attorney are not part of the record below, the record before us cannot support Jones's contention that his plea was not knowingly and intelligently made.

{¶ 31} At the beginning of the plea hearing, Jones's counsel stated that Jones was

going to withdraw his former plea of not guilty, "and there's no agreement as to sentencing."

Jones answered negatively to the question whether "any promises [have] been made...." The full colloquy appears to have meticulously complied with the requirements of the criminal rule and the constitution. No doubt, lawyers and judges could construct a more explicit conversation,[1] but not that is legally required, nor would it avoid the issue raised by Jones.[2] One court has even inquired of a defendant whether there had been any "predictions, prophesies, or promises" made regarding the length of the sentence. *Reinhart v. United States* (W.D.La. Nov. 13, 2008), Case No. 6:97-CR-60030 (emphasis added).

**{¶ 32}** In any appeal we must decide based on the record before us. The on-the-record discussion should not be viewed as a charade or verbal Potemkin Village. The record before us demonstrates that Jones's pleas were made knowingly, intelligently, and voluntarily and does not reflect any abuse of discretion by the trial court.

**{¶ 33}** However, if the affidavit is believed, there may be facts outside this record affecting the knowing and voluntary nature of the plea, which warrant a hearing on Jones's motion to withdraw his plea. A defendant who files a post-sentence motion to withdraw his guilty plea bears the burden of establishing manifest injustice. Crim.R. 32.1; *State*

---

[1] For hyperbolic example: "Court: You have been placed under oath. Has there been anything told or related to you, by your attorney or anyone else, that has created in you an expectation or impression as to what the sentence will be or has otherwise affected your decision to plead guilty or no contest? Have you been told by your attorney or anyone else to answer this question, or any other question, with anything other than the truth, the whole truth, and nothing but the truth? Do you understand that you must tell me the truth and that, if you do not, no matter what you believe or what anybody tells you, you will be forever from now until the end of the universe, prohibited from changing your mind or later saying you are not telling the truth today?"

[2] A defendant could still file an affidavit alleging his attorney told him to answer the questions in a certain way in order to receive the sentence that was promised.

*v. Harris,* Montgomery App. No. 19013, 2002-Ohio-2278, at ¶ 7, citing *State v. Smith* (1977), 49 Ohio St.2d 261, paragraph one of the syllabus. Consideration of "[t]he motion is 'addressed to the sound discretion' of the trial court." *Harris,* at ¶ 7, citing *Smith,* at paragraph two of the syllabus. Thus, an appellate court reviews the trial court's decision under an abuse of discretion standard. *Harris,* at ¶ 7, citing *State v. Adams* (1980), 62 Ohio St.2d 151, 157. The abuse of discretion standard is defined as "'[a]n appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence.'" *State v. Boles,* Montgomery App. No. 23037, 2010-Ohio-278, ¶18, quoting Black's Law Dictionary, Eighth Edition (2004), at 11.

{¶ 34} The trial court did not have an opportunity to rule on Jones's motion to withdraw his plea due to the filing of the instant appeal. Therefore, it is premature for us to address Jones's claim that the trial court erred in failing to grant his motion. On remand, the trial court is also directed to consider Jones's motion to withdraw his plea, upon which he appears to be entitled to a hearing.

{¶ 35} Jones's second assignment of error is overruled. His third assignment of error is overruled as premature, since the trial court has yet to rule on his motion to withdraw his plea.

V

Jones's Fourth Assignment of Error:

{¶ 36} "THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING CONSECUTIVE RATHER THAN CONCURRENT SENTENCES AND THE SENTENCES ARE CONTRARY TO LAW."

Jones's Fifth Assignment of Error:

**{¶ 37}** "THE TRIAL COURT'S DECISION TO ORDER CONSECUTIVE RATHER THAN CONCURRENT SENTENCES WAS NOT SUPPORTED BY THE RECORD."

**{¶ 38}** In his fourth and fifth assignments of error, Jones challenges his sentence. We begin by noting that any challenge to his sentence with regard to the kidnapping and aggravated robbery charges is premature, as those convictions are being remanded to the trial court for consideration of whether any of those convictions should be merged as allied offenses of similar import prior to sentencing. Accordingly, we need only consider his remaining 19-year sentence for two counts of aggravated burglary, two counts of felonious assault, three counts of assault, one count of having weapons under disability, and one count of tampering with evidence.

**{¶ 39}** Jones argues that his sentence is contrary to law because the trial court failed to consider both the purposes and principles of sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors provided by R.C. 2929.12. He maintains that the trial court abused its discretion in imposing consecutive sentences, rather than concurrent sentences. He insists that the general public need not be protected from him since he victimized alleged drug dealers and the general public does not engage in such inherently risky behavior. Jones also claims that his sentence was "not consistent with sentences imposed for similar crimes committed by similar offenders."

**{¶ 40}** In *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, the Ohio Supreme Court explained that when reviewing challenges to sentences pursuant to R.C. 2953.08(G),

an appellant must prove that his sentence is clearly and convincingly contrary to law. On the other hand, when an appeal is based upon R.C. 2929.12, the standard of review is whether the trial court abused its discretion. The abuse of discretion standard is defined as "[a]n appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence." *State v. Boles,* Montgomery App. No. 23037, 2010-Ohio-278, ¶18, quoting Black's Law Dictionary, Eighth Edition (2004), at 11. Jones purports to offer arguments under both statutes.

{¶ 41} Pursuant to *State v. Foster,* 109 Ohio St.1, 2006-Ohio-856, a trial court is no longer required to make findings or give reasons for the sentences that it imposes; the court is vested with the full discretion to impose whatever prison term it chooses within the statutory range. *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, ¶37. Nevertheless, a trial court must still consider the statutory factors. Id. at ¶38.

{¶ 42} Contrary to Jones's claim to the contrary, the record illustrates that the trial court did fully consider both the purposes and principles of sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors provided by R.C. 2929.12, and his sentence is not contrary to law. Prior to imposing sentence, the trial court stated:

{¶ 43} "This is a crime that shocked the sensibilities of a community. This might be the type of crime that you would expect in Los Angeles or New York City where they have gangs and where it is said that there is a lot of crime running rampant.

{¶ 44} "But we are Midwesterners. We are known for being law-abiding citizens, for being warm and generous and for having standards.

{¶ 45} "And so the thing that – and it should go on record that I have struggled with

this case. I have struggled to understand the whys.

{¶ 46} "I understand that you tried to limit the culpability of your client by noting for me that this was a drug deal gone wrong, but that doesn't give you any excuse because you went to their house. You drove there in your wife's car. And I kind of resent the letter that you sent me saying I was desperate; it was a desperate situation. Because if you were that desperate, you wouldn't have driven up.

{¶ 47} "You created this situation, so you got to be held accountable for creating that situation. And this community cannot tolerate the behavior that you have exhibited here.

{¶ 48} "In considering the purposes and principles of sentencing in Ohio Revised Code Section 2929.11 and the seriousness and recidivism factors in Ohio Revised Code 2929.12 and also pursuant to Ohio Revised Code Section 2929.12(F), a prison term is mandatory for a felony of the first or second degree * * *. Therefore, it is ordered that the defendant, Anthony Wayne Jones, will be sentenced to a term of imprisonment at the Ohio Department or Rehabilitation and Correction."

{¶ 49} Jones also argues that the court violated R.C. 2929.11(B), which requires that: "[a] sentence imposed for a felony * * * shall be consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 50} "R.C. 2929.11(B) imposes a duty upon the trial court to ensure consistency among the sentences that it imposes. * * * [It is] also recognized, however, that trial courts are limited in their ability to address this consistency mandate, and appellate courts are hampered in their review of this issue, by the lack of a reliable body of data upon which they can rely. * * * '[A]lthough a defendant cannot be expected to produce his or her own

database to demonstrate the alleged inconsistency, the issue must at least be raised in the trial court and some evidence, however minimal, must be presented to the trial court to provide a starting point for analysis and to preserve the issue for appeal.'   Having failed to raise this issue at sentencing, [the defendant] cannot now argue that the sentence imposed by the trial court was inconsistent with those imposed on similar offenders." *State v. Bell,* Greene App. No. 2004-CA-5, 2005-Ohio-655, ¶140, quoting *State v. Roberts,* Cuyahoga App. No. 84070, 2005-Ohio-28, ¶60, internal citations omitted.

{¶ 51} Even if we accept Jones's general statement that he objected to his sentence to be sufficient, Jones provided the trial court with no "evidence, however minimal" to use as a "starting point for analysis."   Furthermore, we note that Jones's sentence was consistent with that of his co-defendant who was ordered to serve 31 years in prison; Jones's greater sentence can be explained by the fact that he pled to an additional crime, and he was the man who shot one of the victims.

{¶ 52} In support of his claim that his sentence was not comparable to similar crimes committed by similar defendants, Jones directs our attention to just one case, *State v. Loparo,* Cuyahoga App. No. 88229, 2007-Ohio-2783, which we find easily distinguishable from the instant case.   Loparo was sentenced to six years in prison after being convicted of eleven crimes, including three counts each of felonious assault and robbery, two counts of aggravated robbery, and one count each of theft, kidnapping, and abduction.   Loparo committed fewer crimes against only one victim rather than four separate individuals.   Additionally, although Loparo did seriously injure his victim, he did not use a gun in the commission of his crimes, and we have no information concerning Loparo's record or other

sentencing factors.

{¶ 53} Moreover, even if Loparo were a "similar offender" who committed "similar crimes," which we cannot find, we have serious reservations that one dissimilar sentence - be it harsher or more lenient - provides the inconsistency prohibited by the law.

{¶ 54} We conclude that Jones's sentence was not clearly and convincingly contrary to law. Nor did the trial court abuse its discretion in imposing some consecutive sentences. In the absence of any statute to the contrary, "it is a matter solely within the discretion of the sentencing court as to whether sentences shall run consecutively or concurrently." *State v. Nunez,* Montgomery App. No. 22208, 2008-Ohio-3376, ¶8, quoting *Stewart v. Maxwell* (1963), 174 Ohio St. 180, 181. See, also, *State v. Hodge,* 128 Ohio St.3d 1, 2010-Ohio-6320.

{¶ 55} Jones's fourth and fifth assignments of error are overruled.

VI

{¶ 56} Jones's convictions and sentence for four counts of kidnapping and five counts of aggravated robbery are Reversed, and the judgment is Affirmed in all other respects. The matter is Remanded to the trial court for further proceedings consistent with this opinion, which shall include a hearing upon Jones's motion to withdraw his plea, which remained pending when this appeal was taken.

. . . . . . . . . .

GRADY, P.J. and BROGAN, J., concur.

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Andrew T. French
Brent E. Rambo
Hon. Frances E. McGee